**FILED**

**May 29, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2026 Term

_____

No. 24-704

_____

IN RE F.B.

_____

Appeal from the Circuit Court of Wood County
The Honorable J.D. Beane, Judge
No. CC-54-2020-JA-96, No. CC-54-2023-JA-95, No. CC-54-2023-JA-125

VACATED AND REMANDED WITH INSTRUCTIONS
_____

Submitted: February 10, 2026
Filed: May 29, 2026

Keith White, Esq.
St. Marys, West Virginia
Guardian ad litem for the minor child
F.B.
Petitioner

John B. McCuskey, Esq.
Attorney General
Kristen E. Ross, Esq.
Assistant Attorney General
Office of the Attorney General
Charleston, West Virginia
Attorneys for the Respondent
Department of Human Services

Travis Sayre, Esq.
Sayre Law Services, PLLC
Parkersburg, West Virginia
Attorney for Respondent Stepfather

Nancy L. McGhee, Esq.

4th Judicial Circuit Public Defender Corporation
Parkersburg, West Virginia
Attorney for Respondent Mother

CHIEF JUSTICE BUNN delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "This Court reviews the circuit court's orders in abuse and neglect proceedings using the three following standards: (1) substantive rulings, such as whether the evidence supports a conclusion that a child has been abused or neglected or whether termination of parental rights is appropriate, are reviewed for abuse of discretion; (2) factual findings supporting substantive rulings are reviewed for clear error; and (3) to the extent review of the order implicates an issue of law or requires statutory interpretation, our review is de novo." Syllabus Point 1, *In re K.S.*, No. 24-740, __ W. Va. __, __ S.E.2d __ (2026).

2.      "Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order." Syllabus Point 5, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001).

**BUNN, Chief Justice:**

This appeal concerns a circuit court's conclusion that clear and convincing evidence did not prove that a child, F.B., was abused and neglected.[1] In a Sixth Amended Petition, the West Virginia Department of Human Services ("DHS") asserted that two children, S.H. and F.B., were abused and neglected by Mother T.M. and Stepfather M.M. ("the parents"). During two adjudicatory hearings, multiple witnesses testified and the court admitted into evidence two cell phone videos of an altercation between Mother and S.H. and three subsequent forensic interviews of the children—two with S.H. and one with F.B. The circuit court then entered an order summarily concluding that clear and convincing evidence did not show that the children were abused and neglected and dismissing the Sixth Amended Petition. A supplemental order, entered following the dismissal, noted that there was "significant evidence for and against the respondent parents" but found the DHS failed to meet its burden of proof. The guardian ad litem ("GAL") appeals only on behalf of F.B., the younger child, arguing that the circuit court erred by failing to adjudicate the parents as abusive or neglectful and failing to adjudicate F.B. as an abused or neglected child.[2] Alternatively, the GAL argues that the adjudicatory order and supplemental order were insufficient and should be vacated. Because the circuit court failed to comply with West

---

[1] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[2] Because the GAL appealed only regarding the circuit court's determination that F.B. was not an abused or neglected child, the determination regarding S.H. is not at issue in this appeal.

Virginia Code § 49-4-601(i) and Rule 27 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, both of which require that the court make findings of fact regarding whether the child is abused or neglected, we vacate and remand the case for further proceedings pursuant to this opinion.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The DHS filed the Sixth Amended Petition ("the Petition") alleging abuse and neglect following an altercation between S.H. and respondent Mother that occurred in the parents' home on May 10, 2023, alleging that the parents abused and neglected the children. The record before this Court is incomplete regarding the abuse and neglect proceedings that occurred in the case before the filing of the Petition at issue. However, at the time DHS filed the Petition, the record indicates that both parents had successfully completed an improvement period relating to a previous petition.[3] Furthermore, S.H.'s father and stepmother were participating in an improvement period when the altercation between S.H. and Mother occurred that led to the filing of the Petition.

---

[3] Two earlier petitions in the record also allege abuse and neglect by the parents, including a 2021 petition alleging that the parents abused alcohol and controlled substances, engaged in domestic violence, and that Mother emotionally abused S.H. by "screaming" at her, "using foul language[,] and belittling her." A 2023 petition also alleged that the parents abused alcohol and controlled substances and detailed a situation where Mother was arrested for disorderly conduct after the parents admitted "to consuming alcohol then leaving the children alone while they were sleeping to walk to Sheetz." The DHS represents that other petitions in the matter did not concern Mother and Stepfather.

The Petition, filed on May 17, 2023, included information regarding a DHS referral alleging that S.H. claimed Mother hit her during the altercation, that there was a recording showing Mother yelling and "drawing back her fist" during the altercation, and that someone called 911 to report the incident. The DHS referral also stated that Mother was drinking frequently "to the point of intoxication." Describing a Child Protective Services ("CPS") worker's separate interviews of S.H., F.B., and the parents following the reported altercation, the petition alleged that S.H. asserted that Mother kicked and "attacked" her, "pulled her across the floor by her hair[,]" and "got in her face," while the parents admitted that "they would be positive for alcohol and marijuana." The Petition concluded with allegations that the parents "abused alcohol and controlled substances to the extent that proper parenting skills have been impaired[,]" that Mother physically abused S.H., and that Stepfather failed to protect the children from Mother's physical abuse. The Petition incorporated by reference prior petitions' allegations. The circuit court removed the children from the home.

More than a year later, an initial adjudicatory hearing occurred in July 2024 after several continuances.[4] Mother testified and admitted to drinking from 10 a.m. until noon on the morning of the altercation with S.H. She described an argument with S.H. that

---

[4] Although we recite limited testimony from the hearings and filings in the record, we make no findings of fact or conclusions of law regarding the evidence admitted in the underlying abuse and neglect proceedings.

3

occurred around 5 p.m., with S.H. as the aggressor, but denied hitting or dragging S.H. When shown videos of the incident at the hearing, Mother acknowledged the videos' authenticity but asserted that they did not contain the whole incident. She admitted that one video showed F.B. coming into the room during the altercation. She denied pulling S.H. across the floor.

On cross-examination, Mother testified that before 2020, she only saw S.H. every other weekend, because S.H. had resided elsewhere since the age of three. During Mother's previous improvement period, S.H. visited twice.[5] After a petition was filed against S.H.'s father and stepmother, S.H. was placed in Mother's home.[6] Mother claimed that while S.H. was in her custody, they frequently argued, and described three separate "attacks" against her by S.H., with the last one being depicted on the admitted videos.

The court also heard testimony from S.H.'s stepmother, who was on a video call with S.H. during part of the altercation. S.H. had lived with the stepmother and S.H.'s father since she was three, but eventually moved in with her mother. When the stepmother answered S.H.'s call, the stepmother described S.H. as "screaming and crying" and

---

[5] The appendix record does not indicate the length of this improvement period or any relevant terms and conditions.

[6] Mother explained that S.H. "wanted to go home" and "that's why she started all that stuff." However, at the time, S.H.'s father and stepmother were participating in improvement periods.

reported that Mother was hitting S.H. The stepmother testified that she could see blows landing on the child's face, so she instructed S.H. to record the altercation when she was off the phone and she told the child she would call law enforcement. She explained that later, S.H. told the stepmother that "things [were] cooling down."

Stepfather testified that he witnessed the May 10 "fight" between Mother and S.H., also describing S.H. as the aggressor. According to Stepfather, F.B. witnessed "a little bit" of the incident and was upset, but he claimed that "[they] got [F.B] out after the . . . first part of it." Stepfather also stated that he no longer drank alcohol and was not drinking at the time of the incident, although he said that he had a medical cannabis card.[7]

At the final adjudicatory hearing in August 2024, the court heard testimony from the individual who conducted two forensic interviews of S.H. and one of F.B., and

---

[7] At the end of the July hearing, the DHS requested that visitation between Mother and F.B. stop because "visitation hasn't been going well" and because F.B. "has been upset by the visitation[.]" The circuit court indicated that it needed a report and to hear from the GAL regarding the request. In August 2024, the DHS filed a motion to suspend Mother's visitation with F.B. because of the parents' inappropriate interactions with F.B. during numerous visits, concluding that the DHS "believe[d] that the unhealthy pattern taking place during the child [F.B.]'s visitations with [Mother] has escalated to the point there is physical danger." The court ordered that Mother's visits be suspended until it held a hearing on the DHS's motion. The record indicates that the court never held a hearing on the motion before entering its adjudicatory order.

In September 2024, the GAL filed a letter with the court, which he had recently received from a therapist, regarding "concerning statements" F.B. made during a May 2024 intake assessment and which described F.B.'s desires and concerns.

those interviews were admitted into evidence. A CPS worker testified regarding her discussions with the children at their respective schools the day after the altercation, explaining that she investigated "a report that a child was at school and had multiple bruises on her body." The CPS worker testified that she "immediately noticed" bruises when she met S.H. at her middle school and took photos and measurements of them. She reported bruising on S.H.'s arms and legs and explained that S.H. provided her with videos "of what occurred when she got the injuries." The CPS worker also described meeting with F.B., who confirmed her sister's account. The CPS worker then described her interview with the parents. Mother told her that "the kid wasn't telling the truth," and the parents admitted that "they'd probably be positive for alcohol and THC or marijuana but no other drug use in the home." When the worker asked whether she could take items for the children, Mother told the worker that she could "take everything of [S.H.]'s and she didn't want her back."

The police officer who responded to the call for service also testified. The officer testified that he first checked on S.H., who "appeared fine" and indicated it was a "verbal argument[.]" Mother also told the officer it was a "verbal argument" and that she yelled at S.H. because the child interrupted her multiple times but that "nothing physical had occurred." The officer told the circuit court that he did not smell alcohol or notice any injuries but also noted that a victim may minimize or lie about domestic violence because the victim fears "getting in trouble or . . . getting the other party in trouble." At the end of the hearing, Stepfather testified that Mother had a positive relationship with F.B.

6

After hearing arguments from the parties, the circuit court made no findings on the record at the conclusion of the second adjudicatory hearing. In the subsequent adjudicatory order, entered on October 15, 2024, the court found that the evidence and testimony did not establish, by clear and convincing evidence, that S.H. and F.B. were abused or neglected, and made one finding concerning the video evidence of the altercation giving rise to the Petition:

> The Court FINDS that the evidence and testimony presented in this matter, including the above Exhibits as well as the video of the altercation that was introduced as Exhibit 1 during the hearing of July 16, 2024, does not establish, by Clear and Convincing [sic] evidence, that the children named herein were abused or neglected. The video, while concerning, does not clearly and convincingly establish the allegations of abuse and neglect in the Sixth Amended Petition.

The court then dismissed the Sixth Amended Petition.

Two days later, the GAL filed a motion to stay the proceedings and to reinterview F.B. According to the GAL, the child underwent a psychological evaluation on October 9, 2024. Although the report was not yet available, the GAL asserted that the child made additional disclosures regarding Mother's failure to maintain sobriety, which caused the child "to suffer mental and emotional abuse." The GAL requested an investigation into the potential psychological harm F.B. might suffer once reunified with Mother and also asked for a reunification plan. Finally, the GAL requested a stay of the court's adjudicatory order pending appeal to this Court. The DHS filed a motion to stay and a motion for

reconsideration of the adjudicatory order, while the parents each filed a motion to compel F.B.'s immediate return to their custody based on the court's dismissal of the Petition.[8]

The circuit court held a motions hearing on October 21, 2024. In its subsequent order, entered on October 28, 2024, the court noted the "difficulties and complications of this case, chief among them being the approximate balance of evidence." The court found that the video evidence, "while not depicting a physical altercation," was "concerning and troubling." The court further noted concern over "allegations of substance abuse, and particularly those raised by the [GAL] at the October 21 hearing." Still, the court stated that it "finds credible the testimony" of the police officer who investigated the dispute, recounting that the officer testified "that he did not smell alcohol on either respondent, he did not witness any injuries to [S.H.], nor did she report injuries to him when asked, and that all parties reported that the dispute was verbal only." The order noted the complexity of the case:

> In short, there is significant evidence for and against the respondent parents, and [the DHS] must prove the allegations in the petition by clear and convincing evidence. It was this balance of evidence upon which the [c]ourt based its ruling. In addition to the above, this matter has seen six amended petitions and has been pending for over two years, further complicating the determinations that must be made.

---

[8] The parents' motions did not seek to compel the return of S.H.

8

The court further stated that reunification "is the goal in abuse and neglect proceedings, *when reunification is in the best interests of the child*[,]" and that it sought "to protect the best interests of the child while also recognizing the 'substantial rights' of the parents." (Emphasis in original).

The circuit court also recognized that F.B. had "been in foster care for over 500 days" and "immediately thrusting the child back" with the parents without "a transitional period of any kind is not in the best interests of child, particularly considering the objections raised by the [GAL] and [the DHS]." The court ordered that a reunification plan be developed and put in place so the family could be reunified with assistance, including therapy services.[9] The GAL appealed from this supplemental order.

## II.

### STANDARD OF REVIEW

When reviewing a circuit court's determination of whether a child is abused and neglected, we recently established the following standard of review:

> This Court reviews the circuit court's orders in abuse and neglect proceedings using the three following standards: (1) substantive rulings, such as whether the evidence supports a conclusion that a child has been abused or neglected or whether termination of parental rights is appropriate, are reviewed for abuse of discretion; (2) factual findings

---

[9] Updates to this Court pursuant to Rule 11(j) of the West Virginia Rules of Appellate Procedure indicate that F.B. currently resides at a residential treatment program.

9

supporting substantive rulings are reviewed for clear error; and (3) to the extent review of the order implicates an issue of law or requires statutory interpretation, our review is de novo.

Syl. Pt. 1, *In re K.S.*, No. 24-740, __ W. Va. __, __ S.E.2d __ (2026).

## III.

## DISCUSSION

The issue on appeal is whether the circuit court erred when—in the face of conflicting evidence and testimony—it summarily concluded that F.B. was not abused or neglected. The GAL asserts that clear and convincing evidence proved that F.B. was abused and neglected and that the circuit court erred when it did not adjudicate the parents as abusive and/or neglectful,[10] or, in the alternative, that the circuit court's adjudicatory order and supplemental order are insufficient for appellate review and should be vacated. The DHS likewise argues that the adjudicatory order should be vacated due to its lack of findings, or, in the alternative, should be reversed and remanded because clear and convincing evidence shows that F.B. was abused and neglected by the parents. Conversely, the parents each urge the Court to affirm the circuit court. We conclude that the lack of factual findings as to whether F.B. was abused or neglected, particularly in light of the circuit court's admission that "there is significant evidence for and against the respondent

[10] The GAL's first assignment of error states that the circuit court erred by failing to adjudicate Mother as abusive and neglectful, but the GAL's brief incorporates arguments that Stepfather also abused and neglected F.B.

10

parents," impedes meaningful appellate review. Therefore, we vacate the adjudicatory order as to F.B. and remand this case to the circuit court for further proceedings.

Both the relevant abuse and neglect statute, West Virginia Code § 49-4-601(i), and Rule 27 of the Rules of Procedure for Child Abuse and Neglect Proceedings require a court to make findings of fact at the conclusion of the adjudicatory proceedings when determining whether a child is abused or neglected. West Virginia Code § 49-4-601(i) provides that "[a]t the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and *shall make findings of fact and conclusions of law as to whether the child is abused or neglected and whether the respondent is abusing, neglecting*, or, if applicable, a battered parent," and requires that these findings "be incorporated into the order of the court." (Emphasis added). Those "findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence." W. Va. Code § 49-4-601(i). Likewise, Rule 27, entitled "Findings; adjudication order[,]" which corresponds with West Virginia Code § 49-4-601(i), also requires findings of fact and conclusions of law:

> At the conclusion of the adjudicatory hearing, the court shall make findings of fact and conclusions of law, in writing or on the record, as to whether the child is abused and/or neglected in accordance with W. Va. Code § 49-4-601(i). The court shall enter an order of adjudication, including findings of fact and conclusions of law, within ten (10) days of the conclusion of the hearing, and the parties and all other persons entitled to notice and the right to be heard shall be given notice of the entry of this order.

11

As an appellate court for abuse and neglect cases, we do not disturb findings of fact in a circuit court's adjudicatory orders unless the court clearly errs. *See* Syl. Pt. 1, *In re K.S.*, No. 24-740, __ W. Va. __, __ S.E.2d __. While the DHS maintains the burden of proof throughout abuse and neglect proceedings, we have declined to mandate what type of evidence DHS must present to prove a child has been abused or neglected, and in turn we do not dictate what courts must consider when determining whether clear and convincing evidence of abuse or neglect exists. *See* Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (recognizing that the abuse and neglect statute "does not specify any particular manner or mode of testimony or evidence" that the DHS must introduce to satisfy its burden to produce clear and convincing evidence that a child has been abused or neglected). Furthermore, the Court does not "second guess" credibility determinations on appeal, as "[a] reviewing court cannot assess witness credibility through a record[,]" as "[t]he trier of fact is uniquely situated to make such determinations[.]" *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997).

Although we provide deference to the circuit court's factual findings at adjudication, the circuit court's findings "must be sufficient to indicate the factual and legal basis for the [court]'s ultimate conclusion so as to facilitate a meaningful review of the issues presented." *Province v. Province*, 196 W. Va. 473, 483, 473 S.E.2d 894, 904 (1996); *In re R.L.*, No. 21-0017, 2021 WL 2556610, at *4 (W. Va. June 22, 2021) (memorandum decision) (quoting same and affirming a sparse adjudicatory order when "ample" findings

12

were made on the record). Furthermore, "[c]lear and complete findings by the trial judge are essential to enable [the appellate court] properly to exercise and not exceed our powers of review." *In re Edward B.*, 210 W. Va. 621, 632, 558 S.E.2d 620, 631 (2001) (quoting *Nicpon v. Nicpon*, 157 N.W.2d 464, 467 (Mich. Ct. App. 1968)); *In re K.E.*, No. 22-0054, 2022 WL 3960511, at *3 (W. Va. Aug. 31, 2022) (memorandum decision) (quoting same).

These factual findings are not optional, because West Virginia Code § 49-4-601(i) and Rule 27 *require* the circuit court to make findings of fact whether the child is abused or neglected, and these findings in turn allow this Court to adequately review as to whether the circuit court's determination was clearly erroneous. Here, at adjudication, the circuit court made no findings of fact—either on the record or in the corresponding adjudicatory order—explaining why it could not conclude by clear and convincing evidence that F.B. was abused and neglected. The court held two hearings, where multiple witnesses testified, including eyewitnesses to the altercation between S.H. and Mother, and the court admitted into evidence three interviews of the children and two videos of the altercation. Still, in the adjudicatory order, the *only* factual finding by the court was that "[t]he video, while concerning, does not clearly and convincingly establish the allegations of abuse and neglect in the Sixth Amended Petition." And while the circuit court's supplemental order emphasizes that there "is significant evidence for and against the respondent parents," the court never evaluated or detailed any conflicting evidence or testimony. In the supplemental order, the court merely found the police officer's testimony

13

to be credible, without making credibility determinations concerning conflicting witness testimony, and recited that the officer did not smell alcohol on the parents or observe any injuries to S.H. In sum, the court made no attempt to address the factual discrepancies between the witnesses' accounts, and that is not an undertaking that we may perform on appeal. *See State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995) ("An appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact.").

In similar circumstances, when a dispositional order terminating parental rights has lacked required factual findings, and the record fails to shed light on the circuit court's considerations when terminating those rights, the Court has vacated the dispositional order and remanded the case for further proceedings. *See, e.g.*, *In re Edward B.*, 210 W. Va. at 634, 558 S.E.2d at 633. In *In re Edward B.*, the Court explained that the Rules of Procedure for Child Abuse and Neglect Proceedings and the related statutes specify "thorough procedures" for circuit courts to follow that are "not mere general guidance[,]" but are instead "mandatory" and "intended to protect the due process rights of the parents as well as the rights of the innocent children." *Id.* at 632, 558 S.E.2d at 631. The *In re Edward B.* Court vacated a dispositional order that contained inadequate findings, among other issues, holding that

> Where it appears from the record that the process
> established by the Rules of Procedure for Child Abuse and
> Neglect Proceedings and related statutes for the disposition of

cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order.

Syl Pt. 5, *id*. Likewise, we have also vacated improper adjudicatory orders where "the circuit court substantially frustrated the process by disregarding the applicable statutes and rules regarding its adjudication . . . ." *In re H.B.*, ___ W. Va. ___, ___ 922 S.E.2d 350, 359 (2025) (vacating both the adjudicatory and dispositional orders). When a circuit court does not make or "explain" its factual findings, "we do not get the benefit of [the court's] experience and reasoning." *Province*, 196 W. Va. at 483, 473 S.E.2d at 904. Without that reasoning, "any deference we might otherwise accord such a ruling will be nullified by the absence of a meaningful explanation." *Id.*

As we cannot discern the reasoning behind the court's ruling, or what evidence the court relied upon in making its finding, our function as an appellate court is impaired, particularly when the court admits that "there is significant evidence for and against the respondent parents." The relevant statute and Rule pertaining to adjudication command findings of fact, and our appellate review requires the circuit court to adequately grapple with conflicting evidence and credibility determinations. Because the circuit court failed to include factual findings required by the statute and the Rule, and because we cannot adequately assess the circuit court's conclusion that F.B. was not abused or neglected based on the record before us, the "process established by the Rules of Procedure

15

for Child Abuse and Neglect Proceedings and related statutes" relating to adjudication has been "substantially disregarded or frustrated," and we vacate the relevant adjudicatory order as to F.B. Syl. Pt. 5, in part, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620.

## IV.

## CONCLUSION

For these reasons, we vacate the October 15, 2024 adjudicatory order and the October 28, 2024 supplemental order of the Circuit Court of Wood County as they relate to F.B. The Court remands this matter to the Circuit Court of Wood County for the expeditious entry of a new adjudicatory order containing findings of fact and conclusions of law in accordance with this opinion. The Court directs the Clerk to issue the mandate contemporaneously with this opinion.

Vacated and remanded.