**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **R.L. and W.S.**

**No. 21-0017** (Mingo County 20-JA-14 and 20-JA-15)

**MEMORANDUM DECISION**

Petitioner Father J.L., by counsel C. Christopher Younger, appeals the Circuit Court of Mingo County's December 8, 2020, order terminating his parental rights to R.L. and custodial rights to W.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Diana Carter Wiedel ("guardian"), filed a response on behalf of the children also in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in failing to make sufficient findings of fact and conclusions of law in the order on appeal, adjudicating him as an abusing parent, and terminating his parental and custodial rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the initiation of the instant proceedings, the mother filed a domestic violence petition against petitioner in September of 2019. A hearing was held in the Mingo County Family Court in October of 2019 wherein it entered a domestic violence protective order against petitioner and ordered supervised visitation between petitioner and R.L. The next month, the circuit court received a referral from the family court wherein the mother asserted that petitioner neglected and sexually abused R.L. The circuit court directed the DHHR to investigate any possible abuse and neglect of R.L. and submit a report to the court. In December of 2019, the circuit court held another hearing and entered a temporary order continuing visitation between petitioner and R.L. and

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

mandating he pay child support to the mother. The circuit court continued to hold several status hearings over the next few months.

In June of 2020, the DHHR filed a child abuse and neglect petition against petitioner. The DHHR alleged that it received a referral in September of 2019 alleging that petitioner and the mother had lived together with R.L., their biological child, and W.S. and H.G., the mother's children from a prior relationship. According to the petition, a referral indicated that petitioner had sexually abused H.G. for ten years prior to her turning eighteen and moving out of the home. According to the referral, fifteen-year-old W.S. disclosed sexual abuse as well. A Child Protective Services ("CPS") worker interviewed R.L. and W.S. According to the petition, ten-year-old R.L. did not make any disclosures of sexual abuse during her interview. However, W.S. disclosed in her forensic interview that petitioner had made sexually suggestive comments to her. W.S. disclosed that petitioner told her he "would not be opposed to [oral sex]" with her. During the interview, W.S. did not report any inappropriate physical contact or direct threats of abuse. However, W.S. did report that petitioner touched her on her lower back and that this made her uncomfortable. According to the petition, H.G., then an adult, disclosed that petitioner sexually abused her for ten years when she was a teenager in a recorded interview with the State Police. The CPS worker also interviewed the mother, who stated that she had no idea about the abuse and left petitioner's home to protect the children once it was disclosed to her. According to the petition, the CPS worker was unable to thoroughly interview petitioner but, in the presence of his attorney, petitioner denied the abuse allegations. The DHHR also alleged that petitioner was charged criminally with twelve counts of sexual abuse as a result of the disclosures. According to the petition, the DHHR substantiated sexual abuse against petitioner which constituted aggravated circumstances. As such, the DHHR requested that the mother retain legal and physical custody of the children.

The circuit court held a preliminary hearing later that month wherein several witnesses testified as to the allegations in the petition. The CPS worker testified to the investigation into petitioner's conduct, during which W.S. disclosed that petitioner made inappropriate sexual comments to her. Specifically, W.S. disclosed to the worker that petitioner commented on her breasts and her butt. The worker also testified that W.S. told petitioner she was bisexual, and petitioner told her he could "make her straight and make her like it." The CPS worker also testified that she interviewed H.G., who had resided in the home before she turned eighteen years old. The worker testified that H.G. disclosed that petitioner would take her to the store, buy different flavors of lollipops, blindfold her, and put the lollipops in her mouth and ask her to guess the flavor. H.G. disclosed to the worker that during this "game," petitioner would also insert his penis in her mouth. In light of the evidence, the circuit court found there had been sexual suggestions and attempts to engage in sex with W.S. The circuit court further found it was appropriate to remove the children from petitioner's custody and ratified their removal. Upon the recommendation of the guardian, the circuit court also ceased visits between petitioner and R.L. and ordered that petitioner have no contact with the children.

The circuit court held an adjudicatory hearing in August of 2020. At the hearing, the circuit court took judicial notice of all prior testimony, findings of fact, and conclusions of law from the preliminary hearing. No objections were made. Next, a service provider who supervised petitioner's visits with R.L. testified. The service provider testified that petitioner kissed R.L. on

the lips at the end of their first two visits, which she considered inappropriate. The service provider also testified that petitioner initiated handholding with R.L. and interlocked their fingers as they walked around the building together. Based on the service provider's understanding of the allegations in the matter, the service provider testified that these actions caused her concern for the child. Next, a forensic interviewer testified that W.S. disclosed to her that petitioner had sexually abused her older sister and that he attempted to sexually abuse her. According to the forensic interviewer, W.S. alleged that petitioner touched her lower back and made her feel uncomfortable. W.S. also disclosed to the forensic interviewer that petitioner told her "he would not be opposed to [oral sex]" and that he would "make her straight" in reference to her sexual orientation. The forensic interviewer also testified that W.S. disclosed that she asked petitioner for face paint to wear at a ball game and he told her he would "paint her face and make her like it." W.S. also indicated to the forensic interviewer that petitioner wanted to play a game where he would blindfold her and let her try different types of lollipops. The forensic interviewer testified that she believed W.S.'s disclosures and did not believe the child had been coached to make the disclosures. The forensic interviewer also testified that R.L. did not make any disclosures of abuse. Finally, the father of W.S. testified that W.S. told him about petitioner's inappropriate actions toward her. The father testified that he immediately contacted the mother and advised her of W.S.'s disclosures. The father also testified that he never had any issues with the mother regarding visits with their child, despite their prior divorce.

After hearing the evidence, the circuit court found that petitioner abused and neglected the children. The circuit court found that petitioner had engaged in inappropriate touching and attempted to play a sexual game with W.S. The circuit court found it was the same game that petitioner had engaged in with H.G., who he had been accused of molesting. The circuit court further found that W.S. was uncomfortable around petitioner because of his inappropriate comments toward her and because he placed his hand in an uncomfortable way on her backside. The circuit court also found that although R.L. did not make any disclosures of sexual abuse, petitioner acted in an inappropriate manner during supervised visits with the child by kissing the child on the lips and holding her hand inappropriately. Following the circuit court's findings, petitioner moved for an improvement period and contact with R.L. The DHHR objected to petitioner's motion. In support of his motion for an improvement period, petitioner advised the court that he had nothing to improve with regard to parenting R.L. The circuit court denied petitioner's motion for an improvement period and made further findings that he was grooming R.L. for possible sexual contact.

Prior to the dispositional hearing, the guardian filed a report with the circuit court recommending the termination of petitioner's parental and custodial rights to the children. According to the report, H.G. indicated that, during her teenage years, petitioner had abused her by touching her between her thighs, rubbing her feet and legs, and putting his hand under her underwear to touch her butt and vagina. H.G. stated that this abuse was not uncommon and that petitioner engaged in these abuses at least once a month, when everyone else was out of the house or asleep. The report also detailed W.S.'s disclosures, including that petitioner made inappropriate sexual remarks to her about oral sex and references to her sexuality, and touched her lower back which made her feel uncomfortable. According to the report, the guardian became involved in the proceedings when petitioner was still receiving supervised visits with R.L. The report detailed that petitioner kissed R.L. on the lips, would get into a hot tub with her and hold her on his lap, and he

would bring her lollipops, which was inappropriate given the allegations from the other children. According to the report, however, R.L. did not make any disclosures of abuse. The report also detailed that petitioner refused to participate in a psychological evaluation. According to the report, the circuit court also granted the DHHR's request to be relieved from providing services to petitioner based on the aggravated nature of the findings. Finally, the guardian detailed that W.S. stated she did not want future contact with petitioner, but R.L. stated she still wanted future contact with petitioner. However, the guardian indicated that R.L. was only eleven years old at the time and was unable to recognize when petitioner's actions towards her were inappropriate. As such, the guardian did not recommend that petitioner have contact with R.L. or W.S.

In October of 2020, the circuit court held a dispositional hearing wherein the DHHR and guardian moved to terminate petitioner's parental and custodial rights. Prior to the presentation of evidence, the circuit court took judicial notice of all prior testimony, findings of fact, and conclusions of law. Next, H.G. testified to prior sexual abuse by petitioner, including that petitioner inserted his penis into her mouth when she was just nine years old. H.G. testified that she was blindfolded when the incident occurred. H.G. also testified that petitioner would touch her in ways she considered inappropriate and made inappropriate sexual comments. Finally, H.G. testified that she was concerned her younger sisters were in danger because she observed petitioner engage in similar conduct toward W.S. and R.L. After considering the evidence, the circuit court terminated petitioner's parental rights to R.L. and his custodial rights to W.S. In support, the circuit court found that petitioner was grooming W.S. and R.L. for sexual abuse and acted inappropriately toward R.L. during supervised visits. Specifically, the circuit court found this included petitioner having R.L. sitting on his lap in a hot tub, kissing her on the lips, and bringing her lollipops. The circuit court determined that this behavior was grooming the child for sexual abuse and that petitioner attempted to engage in sexual conduct with W.S. The circuit court further found that petitioner sexually abused the children's sibling, H.G., while she was a minor in the home and that the children were in danger of the same conduct. Based on this evidence, the circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination of petitioner's parental and custodial rights was necessary for the children's welfare. Petitioner now appeals the December 8, 2020, dispositional order.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided

---

[2]The children's mother is a nonabusing parent and the children have achieved permanency in her care.

4

the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

First, petitioner argues that the circuit court's adjudicatory order does not contain sufficient findings of fact and conclusions of law for a proper appellate review. Petitioner further asserts that the statements in the adjudicatory hearing order are conclusions, not findings of fact. We disagree and find that the order in question meets the applicable requirements for review on appeal.

West Virginia Code § 49-4-601(i) requires that "[a]t the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether the child is abused or neglected." *See also* R. 27, W. Va. R. of P. for Child Abuse and Neglect Proc. (requiring findings of fact and conclusions of law at the conclusion of the adjudicatory hearing). The circuit court's order "must be sufficient to indicate the factual and legal basis for the [court]'s ultimate conclusion so as to facilitate a meaningful review of the issues presented." *Province v. Province*, 196 W. Va. 473, 483, 473 S.E.2d 894, 904 (1996).

Rule 27 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings provides that "[a]t the conclusion of the adjudicatory hearing, the court shall make findings of fact and conclusions of law, in writing *or on the record*, as to whether the child is abused and/or neglected in accordance with the provisions of W. Va. Code § 49-4-604(i)." (Emphasis added). While we acknowledge that the circuit court's adjudicatory order is somewhat limited in its findings of fact and conclusions of law, the circuit court provided ample findings on the record, many of which have been reproduced in this decision. Rule 27 expressly permits that such findings may be made on the record, a point petitioner seemingly ignores in his argument. Therefore, we find no error in the circuit court's findings of fact or conclusions of law as they are sufficiently detailed for appellate review.

Next, petitioner argues that the circuit court erred in finding by clear and convincing evidence that he abused and neglected the children. Petitioner argues that the circuit court did not have sufficient evidence at adjudication to find that he engaged in the alleged abuse. We disagree and find that petitioner is entitled to no relief.

> At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id*. at 546, 759 S.E.2d at 777 (citation omitted). However, "the clear and convincing standard is 'intermediate, being more

than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted). Further, West Virginia Code § 49-1-201 defines an "abused child" as

> [a] child whose health or welfare is being harmed or threatened by . . . [a] parent . . . who knowingly or intentionally inflicts, attempts to inflict, or knowingly allows another person to inflict, physical injury or mental or emotional injury, *upon the child or another child in the home*.

(Emphasis added).

Here, the circuit court found that petitioner was grooming W.S. and R.L. for sexual abuse and acted inappropriately toward R.L. during supervised visits. The circuit court also found that petitioner sexually abused the children's sibling, H.G., while she was a minor in the home and that the children were in danger of the same conduct. On appeal, many of petitioner's arguments in support of this assignment of error are predicated on his assertions that the circuit court erroneously weighed the evidence in question. However, the rulings to which petitioner cites all come down to the issue of credibility, and, as this Court has long held, "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997).

Further, petitioner argues that W.S. never disclosed that she was sexually abused and that the circuit court erred in finding that the DHHR substantiated sexual abuse during the proceedings. However, petitioner incorrectly argues that the circuit court relied on W.S.'s disclosures to make a finding that petitioner sexually abused the child. Instead, the circuit court based its finding that H.G. was sexually abused, in part, on H.G.'s direct testimony as to petitioner's conduct. Petitioner also argues that the CPS worker could not provide the correct definition of sexual abuse and that W.S.'s allegations of inappropriate comments and touching did not support a finding of sexual abuse of the child. These arguments, however, are unavailing, given that the record is clear that W.S. and R.L. were at risk for similar sexual abuse.

Additionally, in the criminal context, sexual abuse may be proven solely with the victim's testimony, even if that testimony is uncorroborated. Syl. Pt. 5, *State v. Beck*, 167 W. Va. 830, 286 S.E.2d 234 (1981). Given that uncorroborated testimony is sufficient to satisfy the higher standard of proof in a criminal proceeding, it is clear that H.G.'s consistent disclosures regarding petitioner's sexual abuse were sufficient to satisfy the clear and convincing burden of proof below.

Furthermore, petitioner failed to testify and, therefore, failed to rebut H.G.'s and W.S.'s allegations.

> "'Because the purpose of an abuse and neglect proceeding is remedial, where the parent or guardian fails to respond to probative evidence offered against him/her during the course of an abuse and neglect proceeding, a lower court may properly consider that individual's silence as affirmative evidence of that individual's culpability.' Syl. Pt. 2, *West Virginia Dept. of Health and Human*

*Resources ex rel. Wright v. Doris S.,* 197 W.Va. 489, 475 S.E.2d 865 (1996)." Syl.
Pt. 2, *In re Daniel D.,* 211 W.Va. 79, 562 S.E.2d 147 (2002).

Syl. Pt. 2, *In re K.P.*, 235 W. Va. 221, 772 S.E.2d 914 (2015). Thus, there is no error in the circuit court's finding that petitioner's silence was "affirmative evidence" of his culpability in this matter. Viewing the record in its entirety, we find that the circuit court did not err in adjudicating petitioner as an abusing parent based on clear and convincing evidence that he had sexually abused H.G. and that W.S. and R.L. were at risk of similar abuse. Accordingly, we find no error in the circuit court's adjudication of petitioner.

Finally, petitioner argues that the circuit court erred in terminating his parental and custodial rights. According to petitioner, there was insufficient evidence to find that he abused and neglected the children and, therefore, the circuit court committed reversible error by terminating his parental and custodial rights. We disagree and find that the substantial evidence laid out above supports termination of petitioner's parental and custodial rights.

West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental and custodial rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. According to West Virginia Code § 49-4-604(d), "'no reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." As set forth repeatedly above, petitioner's failure to acknowledge the conditions at issue in his case have rendered them uncorrectable. *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) ("Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect . . . , results in making the problem untreatable.").

In terminating petitioner's parental and custodial rights, the circuit court specifically found that petitioner was grooming W.S. and R.L. for sexual abuse and that he sexually abused H.G. when she was in the home. Petitioner continued to deny the allegations against him despite the overwhelming evidence, rendering the problems of abuse and neglect untreatable. The circuit court also found that there was no reasonable likelihood that conditions of abuse and neglect can be remedied in the future. Pursuant to West Virginia Code § 49-4-604(c)(6), circuit courts may terminate parental and custodial rights upon these findings. Additionally, this Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, it is clear that the circuit court did not err in terminating petitioner's parental and custodial rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 8, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: June 22, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton