# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**October 1, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**TYLER C.,**
**Respondent Below, Petitioner**

**v.) No. 24-ICA-33**    (Fam. Ct. Berkeley Cnty. Case No. FC-02-2023-D-460)

**ASHLEY R.,**
**Petitioner Below, Respondent**


## MEMORANDUM DECISION

Petitioner Tyler C.[1] appeals the Family Court of Berkeley County's December 27, 2023, Final Divorce Order that awarded Respondent Ashley R. primary custody of the parties' children, ordered Tyler C. to pay Ashley R. $20,515.74 to equalize equitable distribution, and ordered Tyler C. to pay Ashley R. $300.00 per month for thirty-six months as rehabilitative spousal support. Ashley R. filed a response in support of the family court's order.[2] Tyler C. did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the family court's decision but no substantial question of law. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure for a memorandum decision. For the reasons set forth below, the family court's decision is affirmed, in part, vacated, in part, and this case is remanded for further proceedings consistent with this decision.

Tyler C. and Ashley R. were married for ten years and separated in May 2023. Three children were born of the marriage, namely, C.C., born in 2013, M.C., born in 2019, and H.C., born in 2022. On June 26, 2023, Ashley R. filed a petition for divorce in the Family Court of Berkeley County.

---

[1] To protect the confidentiality of the juveniles involved in this case, we refer to the parties' last names by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 W.E.2d 123, 127 n.1 (1990).

[2] Tyler C. is represented by Cameron T. LeFevre, Esq. Ashley R. is represented by Cinda L. Scales, Esq.

1

The family court held an initial hearing on the divorce petition on August 28, 2023, and subsequently entered a temporary order that awarded Ashley R. primary custody of the children and awarded Tyler C. parenting time every first, second, and third weekend from Friday evening until Monday morning, and every Monday evening until Thursday morning of the week after the fourth weekend. Based on his financial statement filed with the court on August 16, 2023, indicating his gross income was $700 per week, the court also ordered Tyler C. to pay child support in the amount of $597.00 per month.[3] The court further ordered the following: that the domestic violence protective order against Tyler C. remain in effect; that Tyler C. take necessary steps to have his driver's license reinstated; that Tyler C.'s girlfriend refrain from being present at custody exchanges and FaceTime calls with the children; and that Tyler C. provide documentation showing his adjusted gross income, including any and all tax returns. The order scheduled a status hearing for October 25, 2023.

On November 7, 2023, the family court entered an order from the October 25 status hearing that ordered Tyler C. to disclose statements from all bank accounts he had access to as of the date of the parties' separation, statements for his CashApp account, and statements for his business account, and ordered him to file a complete financial statement with the court.[4] The court also forbade the parties from discussing any aspect of the case with their children and from making social media postings and derogatory comments towards the other party or in reference to the other party.

On December 12, 2023, the family court held a final hearing. At the final hearing, Tyler C. requested equal (50-50) custody of the children and Ashley R. requested primary custody of the children. Tyler C. acknowledged that he had not paid any of the court ordered child support. He testified that Ashley R. owned the premarital home as her separate property and that he "wanted nothing to do with it." He testified that he had a high school degree and was a self-employed business owner of a limited liability excavation company. He testified that although his 2022 gross income was $164,000.00, after his expenses, his adjusted gross income was $28,000.00 annually. However, the financial documentation he provided to the family court only included one page from his 2022

---

[3] Tyler C. only listed the parties' separate property and did not list any debts. He listed a vehicle that he owned, a vehicle Ashley R. owned, and the nonmarital home that Ashley R. owned. He did not list any market value or amount owed for any of the separate property.

[4] Tyler C. filed a second financial statement on November 7, 2023. He did not list any income; the only property he listed as his separate property were several guns. He listed that he had a $20,000.00 separate debt from an equipment company, and his total monthly expenses were $3,690.00, which included his rent, electric, water, telephone, gas, and car payment.

individual income tax return, bank statements from his business account, and a single screen shot from his CashApp account. He did not provide the court with his company's tax returns, his CashApp statements, his personal expenses, or his debts. He testified that he was unaware that the family court needed all the documentation with details of his earnings and expenses.

When questioned about his expenses, Tyler C. testified that he lived rent-free with his girlfriend and that since his vehicle was in his mother's name, his mother paid the $750.00 monthly loan payment. Tyler C. testified that his personal expenses included groceries and gas, and when asked for a specific dollar amount, he stated that the amount varied. He also testified that his business expenses included gas, rentals, material, and food. However, upon further questioning regarding individual transactions on his business account's bank statements, Tyler C. testified that he also used his business account as his personal account. He further testified that his personal tax return was his company's tax return and that he took care of his own taxes through TurboTax. He testified that TurboTax deducted his expenses from his $164,000.00 gross income, which resulted in him having a net income of $28,0000.00 annually in 2022.[5] He testified that he did not know his gross or net income for 2023 but acknowledged that it was likely the same as 2022.

Ashley R. testified that she had a high school degree, and worked for a daycare center, which was where she worked during the entirety of the parties' marriage. She testified that her current gross income was $878.00 weekly. She acknowledged that her debts consisted of a vehicle loan payment and credit cards. Ashley R. also requested that the family court award her $500.00 per month in spousal support since Tyler C. was the primary wage earner throughout their marriage.

Additionally, during the final hearing, evidence was presented showing that Tyler C. had made inappropriate comments concerning the case on social media after being ordered to refrain from such action. He also testified that he willfully violated the family court's previous order by bringing his fiancée with him to custody exchanges.

At the conclusion of the hearing, the family court determined that the presumption of equal (50-50) custody had been rebutted and awarded primary custody of the children to Ashley R. Specifically, the court found that pursuant to West Virginia Codes §§ 48-9-209(f)(3)(A) (2022), 48-9-209(f)(6), 48-9-209(f)(7), and 48-9-209(f)(4)(B), limiting factors were present. The court also equitably distributed the parties' property. To equalize distribution, the court ordered Tyler C. to pay Ashley R. the sum of $20,515.74, to which he objected based on his net income and debt. The court also went through the spousal support factors contained in West Virginia Code § 48-6-301 (2018) and ordered Tyler C.

---

[5] A review of his individual tax return does not show a $164,000.00 gross income figure. The highest monetary figure on the document is $30,878.00.

to pay Ashley R. $300.00 per month in rehabilitative spousal support for thirty-six months. The court explained, based upon the evidence presented, that since Tyler C. did not have a rent or mortgage payment, his mother paid for his car payment, his annual gross income was $164,000.00, he did not provide any evidence of his alleged debts or expenses, and he had not made a single child support payment, he was capable of paying spousal support to allow Ashley R. time to find a higher paying job. Tyler C. objected to the court's spousal support ruling by stating that his annual net income was only $28,000.00. At the conclusion of the hearing, the family court, over Ashley R.'s objection, gave Tyler C. additional time to submit complete financial documentation, including any debt as it related to equitable distribution, for the court to consider prior to entering a final order.

After receiving no additional financial documentation from Tyler C. to support his objections, the family court entered a final order on December 27, 2023. The court found that the presumption of equal (50-50) custody had been rebutted and awarded primary custody of the children to Ashley R. Tyler C. was awarded parenting time every two out of three weekends on a three-week rotating schedule and received parenting time on Tuesday and Thursday evenings from after school until 8:00 p.m. on the week that he did not receive weekend parenting time. In support of its ruling, the court reasoned that:

A. [Tyler C.] has not paid any child support to [Ashley R.] as of this date and is in willful and contumacious contempt of this [c]ourt's [o]rder.
B. The [c]ourt does not believe [Tyler C.] can cooperate and collaborate with [Ashley R.] for the best interests of the children.
C. The [c]ourt believes [Tyler C.] will not encourage a positive relationship between the children and [Ashley R.] as [he] has done things such as stating his current girlfriend is a "better mother" to the children than [Ashley R.]. [Tyler C.] has also made derogatory comments about [Ashley R.] on social media.
D. That there has been a previous finding of this [c]ourt that domestic violence, as defined by W. Va. Code § 48-27-202 et seq., was perpetrated by [Tyler C.].

The family court also ordered Tyler C. to pay Ashley R. $20,515.74 to equalize distribution. Ashley R. was given the exclusive use and ownership of her premarital home, the exclusive use, ownership, and debt of her vehicle, and the debt of her credit cards. Tyler C. was given the exclusive use, ownership, and debt of his vehicle, and his business bank account. Tyler C. was additionally ordered to pay Ashley R. $300.00 per month in rehabilitative spousal support for thirty-six months and child support for the parties' children. It is from this order that Tyler C. now appeals.

When reviewing the order of a family court, we apply the following standard of review:

When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

Tyler C. argues three assignments of error on appeal. In his first assignment of error, Tyler C. argues that the family court's equitable distribution determination was clearly erroneous because it did not account for his marital debt obligations or the reduction in principal on the mortgage of the home during the parties' marriage. We disagree. "When the issue in a divorce proceeding is the equitable distribution of marital property, both parties have the burden of presenting competent evidence to the trial court concerning the value of such property." Syl. Pt. 3, *Roig v. Roig*, 178 W. Va. 781, 364 S.E.2d 794 (1987). Further, Rule 13 of the West Virginia Rules for Practice and Procedure for Family Court provides that both parties shall file completed financial disclosure statements with the circuit clerk.[6]

---

[6] Rule 13 of the West Virginia Rules of Practice and Procedure for Family Court states the following:

(a) Required Financial Information on Motions for Relief. The petitioner and respondent shall file completed financial statements with the circuit clerk as provided in Rule 9 herein. Any updates or amendments to financial statements shall be filed with the circuit clerk and served on all parties pursuant to the date specified by the scheduling order of the Court or no later than five days prior to any hearing, whichever first occurs, that deals with the establishment or modification of support. In cases which may involve spousal support, child support, allocation of custodial responsibility, visitation, or paternity, the petitioner and respondent shall file the following documentation in support of the required financial statement pursuant to the date specified by the scheduling order of the Court or no later than five days prior to any scheduled hearing, whichever first occurs:

(1) A copy of the party's three (3) most recent wage or salary stub showing gross pay, deductions for taxes and other items, and net pay for a normal pay period, and for the year-to-date;

(2) Copies of the party's complete income tax returns for the two years immediately preceding the date the petition was filed, together with copies

Here, Tyler C. failed to file any financial documentation regarding marital debt, although the court ordered him to produce completed financial documentation multiple times throughout the parties' divorce proceeding. Even after failing to abide by the court's orders, and over Ashley R.'s objection, the court permitted him even more additional time after the conclusion of the final hearing to submit these documents for consideration. Tyler C. failed to take advantage of the court's extension and once again provided no documentation regarding marital debt for the family court to consider.

The Supreme Court of Appeals of West Virginia has long held that "with regard to the family court's factual findings that underlie its equitable distribution order, [appellate courts] will not set aside findings of fact, whether based on oral or documentary evidence, unless they are clearly erroneous." *Mulugeta v. Misailidis*, 239 W. Va. 404, 408, 801 S.E.2d 282, 286 (2017). As the *Mulugeta* Court stated:

> Generally, if there is competent evidence to support factual findings, this Court will not reverse those findings as clearly erroneous. *See* Syl. Pt. 3, *Estate of Bossio v. Bossio*, 237 W.Va. 130, 785 S.E.2d 836 (2016) (" 'A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's

of the federal Form W-2 for those years; and a copy of the Form W-2 for the most recent year for which that form is available, even if a tax return has not yet been filed for that year;

(3) For a self-employed party, a copy of a current financial statement showing gross income, expenses, and net income;

(4) Copies of any invoices or receipts showing the cost of any extraordinary medical expenses for the party or the children, of any child care expenses, and of any expenses necessitated by the special needs of the children.

(b) Failure to File Required Financial Information and Supporting Documentation; Sanctions**.** The failure to file or untimely filing of any required financial information shall not be grounds for a continuance. If a party fails to file or untimely files any required financial information, the court may refuse to grant requested relief to that party, and/or may accept the financial information of the other party as accurate.

account of the evidence is plausible in light of the record viewed in its entirety.' Syl. Pt. 1, in part, *In re Tiffany Marie S.,* 196 W.Va. 223, 470 S.E.2d 177 (1996).").

*Id*. In its order, the family court explained that Tyler C. continuously failed to provide any documentation pertaining to marital debt, despite the court allowing him additional time to file the same. Thus, we conclude that the family court did not err regarding the equitable distribution of the marital debt.

Additionally, after a review of the hearing, the record indicates that Tyler C. never objected to the reduction in principal on the mortgage regarding Ashley R.'s premarital home. Specifically, he testified that it was Ashley R.'s home and he wanted nothing of it. "Generally[,] the failure to object constitutes a waiver of the right to raise the matter on appeal." *State v. Asbury*, 187 W. Va. 87, 91, 415 S.E.2d 891, 895 (1992). Therefore, we conclude that Tyler C., by failing to object to the reduction in principal on the home, waived his right to raise this matter on appeal.

For his second assignment of error, Tyler C. argues that the family court abused its discretion by awarding rehabilitative spousal support pursuant to West Virginia Code § 48-6-301 (2018) without considering the list of factors. In support, he contends that pursuant to *Jackson v. Jackson*, No. 23-ICA-162, 2024 WL 140330, at *2 (W. Va. Ct. App. Jan. 12, 2024) (memorandum decision), "the specific list of factors under West Virginia Code § 48-6-301(b) must be considered by the family court" before spousal support can be awarded. We agree.

Here, although the record indicates that the family court considered the list of spousal support factors during the hearing, the written order fails to incorporate the court's oral findings and analysis that were made from the bench. The Supreme Court of Appeals of West Virginia has long held that "a court speaks only through its orders" when its oral statement conflicts with its written statement. *Legg v. Felinton*, 219 W. Va. 478, 483, 637 S.E.2d 576, 581 (2006). *See State v. White*, 188 W. Va. 534, 536 n.2, 425 S.E.2d 210, 212 n.2 (1992) ("[H]aving held that a court speaks through its orders, we are left to decide this case within the parameters of the circuit court's order." (citations omitted)); *State ex rel. Erlewine v. Thompson*, 156 W. Va. 714, 718, 207 S.E.2d 105, 107 (1973) ("A court of record speaks only through its orders[.]" (citations omitted)).

For this Court to properly review a family court order:

"[t]he order must be sufficient to indicate the factual and legal basis for the [family court]'s ultimate conclusion so as to facilitate a meaningful review of the issues presented." *Province v. Province*, 196 W.Va. 473, 483, 473 S.E.2d 894, 904 (1996); *see also Nestor v. Bruce Hardwood Flooring, L.P.*, 206 W.Va. 453, 456, 525 S.E.2d 334, 337 (1999) ("[O]ur task as an appellate

7

court is to determine whether the [family] court's reasons for its order are supported by the record."). "Where the lower tribunals fail to meet this standard—i.e. making only general, conclusory or inexact findings—we must vacate the judgment and remand the case for further findings and development." *Province*, 196 W.Va. at 483, 473 S.E.2d at 904.

*Collisi v. Collisi*, 231 W. Va. 359, 363–64, 745 S.E.2d 250, 254–55 (2013). Thus, we conclude that the family court's order, as it pertains to spousal support, is vacated, and the case is remanded for the limited purpose of allowing the family court to enter an order that fully considers the list of spousal support factors and provides a detailed analysis to support its determination.

As his third assignment of error, Tyler C. argues that the family court erred by denying him equal custodial allocation of his children. In support, he argues that the court made insufficient findings of fact and conclusions of law to support deviating from the presumption of equal custody. We disagree.

In *Jonathon F. v. Rebekah L.*, 247 W. Va. 562, 883 S.E.2d 290 (Ct. App. 2023), we stated that:

West Virginia Code § 48-9-206(a) [2022] presumes equal (50-50) custodial allocation of parenting time unless otherwise resolved by agreement of the parties. However, the family court may deviate from equal custodial time if the court expressly finds that the arrangement would be harmful to the child or that a provision of West Virginia Code § 48-9-209(f) [2022] necessitates another arrangement.

*Id.* at 564, 883 S.E.2d at 292 (Ct. App. 2023).

Here, the family court explained its reasoning for awarding Tyler C. less than equal custody. The court found that four provisions of West Virginia Code § 48-9-209(f) warranted a deviation from equal (50-50) custody. Specifically, the court found the following: that pursuant to West Virginia Code § 48-9-209(f)(3)(a), Tyler C. was in "willful and contumacious contempt of this [c]ourt's [o]rder" by refusing to pay child support throughout the entire proceeding; that pursuant to West Virginia Code § 48-9-209(f)(6), Tyler C. could not "cooperate and collaborate with [Ashley R.] for the best interests of the children"; that pursuant to West Virginia Code § 48-9-209(f)(7), Tyler C. "made derogatory comments about [Ashley R.] on social media" and would "not encourage a positive relationship between the children and [Ashley R.]"; and that pursuant to West Virginia Code § 48-9-209(f)(4)(B), Tyler C. had previously committed domestic violence against Ashley R. The court also noted that Tyler C.'s behavior throughout the proceedings was "far outside the norm" and expressed concerns regarding his mental health. Therefore,

we conclude that the family court did not err in awarding Tyler C. less than equal (50-50) parenting time.

Accordingly, we affirm, in part, vacate, in part, and remand the December 27, 2023, final order to the Family Court of Berkeley County for further proceedings consistent with this decision.

Affirmed, in part, Vacated, in part, and Remanded.

**ISSUED:** October 1, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear