# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**August 29, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**FABIANO D.,**
**Respondent Below, Petitioner**

**v.) No. 25-ICA-11** (Fam. Ct. Greenbrier Cnty. Case No. FC-13-2019-D-143)

**DYLAN Y.,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner Fabiano D.[1] ("Father") appeals the Family Court of Greenbrier County's December 9, 2024, remand order that awarded Respondent Dylan Y. ("Mother") primary custody of the parties' child after finding that 50-50 custodial allocation was impractical due to the distance between the parties' residences, the parties' daily schedules, the child's daily schedule, and because it would disrupt the child's education. Mother and the child's guardian ad litem ("GAL") filed responses in support of the family court's order.[2] Father did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the family court's decision but no substantial question of law. For the reasons set forth below, a memorandum decision vacating, in part, affirming, in part, and remanding to the family court for further proceedings is appropriate under Rule 21 of the Rules of Appellate Procedure.

This custody matter was previously appealed and remanded to the family court by a memorandum decision entered on October 28, 2024, with directions to issue an order with specific findings of fact and conclusions of law in accordance with West Virginia Code §§ 48-9-206 (2022) and 48-9-209 (2024) by adhering to West Virginia Code § 48-9-

---

[1] To protect the confidentiality of the juvenile involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Father is represented by Matthew A. Bradford, Esq. and Brandon L. Gray, Esq., Bradford & Gray, PLLC. Mother is represented by Leah M. Smith, Esq., Legal Aid of West Virginia. The GAL for the child is Amber Hinkle, Esq., Taylor, Hinkle & Taylor, Inc.

1

102a (2022).[3] Thus, because that decision contains a detailed factual recitation, we will only briefly discuss the background facts of the case in this decision.

The parties never married and are the parents of one child, born in 2017. Mother resides in Lewisburg with the child and Father resides in Kitty Hawk, North Carolina. On July 18, 2019, Mother filed a Petition for Support and Allocation of Custodial Responsibility in the Family Court of Greenbrier County asking the court to adopt her proposed parenting plan and award her primary custody of the child. Mother alleged that Father failed to regularly exercise parenting time during the previous year and that Father used FaceTime communication with the child as an opportunity to degrade Mother. She proposed that Father's parenting time be supervised by her stepfather. Sometime thereafter, the family court appointed a GAL for the child.

In late 2019, the child returned home after an unsupervised visit with Father and disclosed to Mother that Father touched him in a sexually inappropriate manner. In response, on January 2, 2020, Mother made a referral to West Virginia Child Protective Services ("CPS"), who conducted a brief investigation and failed to substantiate the allegations.

On February 5, 2020, Father filed an answer to Mother's Petition for Support and Allocation of Custodial Responsibility denying the allegations of abuse and alleged that Mother had a history of drug abuse, mental illness, and had withheld the child from him. Father requested primary custody of the child.

The GAL interviewed Father on April 17, 2020. The GAL recommended increasing Father's parenting time but recommended that such visitation occur in West Virginia. Over the next several months, Father's visits with the child occurred at a hotel Father booked in the Lewisburg area.

In early July of 2021, Mother was contacted by the Dare County, North Carolina Department of Social Services ("DSS") informing her that an anonymous report had been filed against Father and requesting a forensic interview of the child. During that interview, the child again disclosed that Father had touched him in a sexually inappropriate manner. On July 13, 2021, after consulting with the GAL, Mother's counsel filed a Motion for Ex Parte Order for Temporary Custody. Following a comprehensive investigation and examination of the forensic interview DVD, the GAL issued a report on September 30,

---

[3] *See Fabiano D. v. Dylan Y.*, No. 24-ICA-77, 2024 WL 4590062 (W. Va. Ct. App. Oct. 28, 2024) (memorandum decision).

2021. The report indicated that while the child's allegations were significant, some of his statements were fantastical and unrealistic.

Due to the CPS and DSS investigations, the family court made a written referral to the circuit court based upon its reasonable suspicion that the child had been abused or neglected. *See* W. Va. R. Prac. & Proc. For Fam. Ct. 48. Thereafter, on October 14, 2022, the case was removed to the Circuit Court of Greenbrier County. The case was dismissed by the circuit court on March 20, 2023, based upon its finding that there was not clear and convincing evidence of sexual contact between Father and child. Therefore, jurisdiction was returned to the family court.

At the family court's final hearing on January 25, 2024, Father contended that Mother had failed to rebut the presumption of 50-50 custodial allocation and asserted his entitlement to primary custody because of the CPS referrals he deemed to be fraudulent. Father's counsel proffered the following argument for his assertion that the referrals were fraudulent:

> [M]y client had asked for primary custody due to the unsubstantiated referrals that were made by [M]other . . . And, of course, under the code[,] that would be grounds for a change in custody . . . He still is requesting primary [custody] as a result of those fraudulent reports of child sex abuse that were never substantiated.

The GAL, however, opined that the presumption of 50-50 custody did not apply because the case was initiated before the effective date of West Virginia Code § 48-9-102a. The GAL expressed the view that even if the 50-50 presumption were applicable, the child's best interests should take precedence, and considering the significant distance between the parties and the fact that Mother had traditionally been the primary caregiver for the child, a 50-50 custody arrangement would not serve the child's best interests.

The family court issued its final order on January 31, 2024. The court endorsed the GAL's recommendations, deeming them to serve the child's best interest. The court's order opted for a parenting plan mirroring the one described in detail in the GAL's letter.

Father appealed the family court's January 31, 2024, order to this Court and on October 28, 2024, we issued a memorandum decision vacating and remanding to the family court. This Court stated that although the family court may reach the same conclusion on remand, a proper application of the law and analysis must be articulated to explain the reasoning for its determination.

On December 9, 2024, the family court entered a remand order. The order stated that, pursuant to West Virginia Code § 48-9-102a, there was a rebuttable presumption that 50-50 custody was in the child's best interest. The court found that the parties lived

3

approximately seven hours apart, both parties were employed full-time, and Mother has exercised primary custody of the child since the parties' separation. The court also found that pursuant to West Virginia Code § 48-9-209(f)(5), 50-50 custodial allocation was impractical due to the physical distance between the parents' residences, each parent's and the child's daily schedules, and because it would disrupt the child's education. Father was given parenting time for two weekends every month, one to be exercised in North Carolina and one to be exercised in West Virginia. Thanksgiving breaks, spring breaks, and holidays were divided equally between the parties. For summer breaks, the court awarded Father one week of parenting time every two weeks on a rotating schedule, such that the child would be with Mother during the final two weeks of summer break. It is from this December 9, 2024, order that Father now appeals.

When reviewing the order of a family court, we apply the following standard of review:

> When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

"Questions relating to . . . the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syl. Pt., *Nichols v. Nichols*, 160 W. Va. 514, 236 S.E.2d 36 (1977). With these standards in mind, we consider the issues raised on appeal.

Father raises two assignments of error on appeal. He first asserts that the family court failed to properly apply West Virginia Code § 48-9-209(b) by ignoring the limiting factors and failing to impose limits that are reasonably calculated to protect the child or child's parent from harm. In support of his argument, Father contends that Mother made fraudulent reports of child abuse and, as such, the family court was mandated to limit her parenting time. We disagree.

West Virginia Code § 48-9-209(a)-(b) states, in pertinent part, the following:

> When entering an order approving or implementing a temporary or permanent parenting plan order, including custodial allocation, the court shall consider whether a parent . . . Has made one or more fraudulent reports

4

of domestic violence or child abuse . . . If a parent or another person regularly in the household of the parent is found to have engaged in any activity specified by subsection (a) of this section, the court shall impose limits that are reasonably calculated to protect the child or child's parent from harm.

Father asserts that the family court abused its discretion by failing to address the three unsubstantiated CPS referrals in its written order, which it was statutorily mandated to discuss therein. The Supreme Court of Appeals of West Virginia ("SCAWV") has long held that "[i]n general, an abuse of discretion occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed but the . . . court makes a serious mistake in weighing them." *Shafer v. Kings Tire Serv., Inc.,* 215 W. Va. 169, 177, 597 S.E.2d 302, 310 (2004) (citation omitted).

Here, the record indicates that the reports of child abuse were "unsubstantiated" but there is no finding by the family court that the reports were "fraudulent." While Mother admittedly made one report to CPS because the child disclosed disturbing events to her that allegedly occurred during Father's parenting time, Father cites to nothing in the record that suggests Mother's report was fraudulent, or that Mother was responsible for the remaining two CPS referrals. In fact, Mother's sole report appears reasonable given the circumstances that gave rise to the matter.[4] As the SCAWV has explained, the law protects child abuse reports made "in good faith[.]" *See Mark V.H. v. Delores J.M.*, No. 18-0230, 2019 WL 4257183, at *17 (W. Va. Sept. 9, 2019) (quoting W. Va. Code § 49-2-810 (2020)). Because the family court made no finding that Mother's CPS report was fraudulent, it was unnecessary for the family court to limit her parenting time. *See* W. Va. Code § 48-9-209(b) (stating that the court shall impose limits *if a parent is found* to have made one or more fraudulent reports of child abuse) (emphasis added). Thus, we conclude that it is unnecessary for a family court to make findings as to each limiting factor but only to those specifically applicable and appropriate to the case. Accordingly, we find no error.

In his second assignment of error, Father argues that the family court erred by failing to construct a parenting plan that maximized his parenting time pursuant to West Virginia Code § 48-9-102a.[5] Specifically, Father asserts that the court abused its discretion by not

---

[4] Mother reported to the GAL that Father had flipped the child's penis back and forth since birth when changing the child's diapers saying "ding-ding," and refused to stop. Thus, Mother's report that the child revealed to her that Father was touching him inappropriately during his parenting time, when Mother was not present, does not indicate that she knowingly made a false report of child abuse.

[5] West Virginia Code § 48-9-102a provides that,

awarding him equal custody during the summer break since the child's education would not be disrupted during that time. We find merit in this argument.

The SCAWV has consistently found that to properly review an order of a family court, "[t]he order must be sufficient to indicate the factual and legal basis for the [family court]'s ultimate conclusion so as to facilitate a meaningful review of the issues presented." *Province v. Province*, 196 W. Va. 473, 483, 473 S.E.2d 894, 904 (1996). "A custodial allocation could potentially be upheld as equal (50-50) parenting time or as a justified deviation if the family court had provided reasons for its determination with specific findings of fact and conclusions of law[.]" *Kane M. v. Miranda M*., 250 W. Va. 701, 705, 908 S.E.2d 198, 202 (Ct. App. 2024).

Here, Father was given two weekends of parenting time every month during the child's school year and one week every two weeks during the summer. While the court explained that a 50-50 parenting plan was impractical because the parties lived seven hours apart, and because it would disrupt the child's education as well as the parties' and the child's daily schedules, Father argues that the family court failed to explain why 50-50 custody was not allocated during the summer.

We find no error with the family court's determination that 50-50 parenting time during the school year is not practical due to the distance between the parties. However, we recognize Father's legitimate concern that the distance between the parties and the disruption of the child's education and daily schedule is less of an issue during summer break. The family court's order does not identify an additional limiting factor applied which would rebut the 50-50 presumption during summer break. While the family court is afforded deference on these matters, we vacate and remand the parenting plan order as it relates to the summer break to enable the family court to address whether it would be infeasible to maximize Father's parenting time during the summer break so that at a minimum Father's parenting time would at least be equal to Mother's parenting time during the summer break.

Accordingly, the December 9, 2024, order of the Family Court of Greenbrier County, as it pertains to summer breaks in the parenting plan only, is hereby converted into

---

There shall be a presumption, rebuttable by a preponderance of the evidence, that equal (50-50) custodial allocation is in the best interest of the child. If the presumption is rebutted, the court shall, absent an agreement between the parents as to all matters related to custodial allocation, construct a parenting time schedule which maximizes the time each parent has with the child and is consistent with ensuring the child's welfare.

6

a temporary order, and the matter is remanded for the court to enter an order with sufficient findings of fact and conclusions of law to support its ruling consistent with this decision.

Affirmed, in part, Vacated, in part, and Remanded.


**ISSUED:** August 29, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White