# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**February 19, 2026**

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**CAITLYN W.,**
**Petitioner Below, Petitioner**

**v.) No. 25-ICA-207**    (Fam. Ct. Gilmer Cnty. Case No. FC-11-2023-D-2)

**AMOS W.**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Caitlyn W.[1] ("Mother") appeals the April 17, 2025, Final Order of Divorce entered by the Family Court of Gilmer County. Amos W. ("Father") filed a response and a cross assignment of error. The guardian ad litem ("GAL") filed a summary response requesting a remand. Mother filed a reply.[2]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' oral and written arguments, the record on appeal, and the applicable law, this Court finds that there is error in the family court's decision but no substantial question of law. For the reasons set forth below, a memorandum decision affirming, in part, and vacating, in part, the family court's decision, and remanding the matter for further proceedings, is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties were married on July 6, 2017, and separated on January 7, 2023. The parties shared one child, born in 2019. Mother filed for divorce on January 27, 2023, alleging the grounds of irreconcilable differences, habitual drunkenness, and cruel and inhuman treatment. On that same date, Mother filed a motion for ex parte relief seeking sole custody, alleging that Father refused to actively participate in their child's caretaking, abused alcohol, drove while drunk with the child, was both verbally and emotionally abusive, and Father was at risk to flee the jurisdiction with the child. An ex parte hearing was held on January 30, 2023. The family court entered its ex parte order the same day granting sole custody of the child to Mother in addition to exclusive use and possession of

---

[1] To protect the confidentiality of the juveniles involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Mother is represented by Larry W. Chafin, Esq., and Debra V. Chafin, Esq. Father is represented by Jared S. Frame, Esq. The GAL is Allison McClure McManus, Esq.

1

the marital home. On February 6, 2023, Father filed a response to the ex parte motion, denying all Mother's allegations and requesting a hearing. On March 6, 2023, the family court held a final hearing on Mother's ex parte motion.[3]

On April 3, 2023, Mother filed a petition for a domestic violence protective order ("DVPO"). She alleged that on April 1, 2023, Father followed her to a gas station, tried to engage in small talk, and prevented her from closing her car door. She also alleged that he had been stalking her, parking near the home to watch her come and go, was suicidal on multiple occasions, and that she had a text from Father's mother advising her to leave the home before Father arrived there angry.

On April 11, 2023, the family court entered an order following the March 6, 2023, hearing. At that hearing, a GAL was appointed, and Father agreed to submit to random drug screens and enroll in Sober Link at his expense. The order noted that Father had three prior DUIs and continued to drink significant amounts of alcohol. Mother was designated the primary residential parent with Father having supervised parenting time from Thursday at 5:00 p.m. until Friday at 5:00 a.m. at paternal grandmother's home. Father was ordered to provide a negative Sober Link report to Mother twenty-four hours before and fifteen minutes before his parenting time. Father was ordered to pay the monthly mortgage of $834.99, Mother's monthly car payment of $842.06, and $1,000 per month in child support. On April 17, 2023, after a hearing, the family court entered a DVPO against Father for a term of 180 days.

On or about June 20, 2023, Mother filed a petition for contempt and a second motion for ex parte relief, alleging that Father failed to follow the family court's April 11, 2023, temporary order and the DVPO. Specifically, Mother alleged that Father failed to pay any of the court-ordered bills, including child support. Additionally, Mother alleged that Father violated the DVPO by sending eight emails and two Google Chat messages, coming to the former marital home twice,[4] and requesting the police to do a welfare check while he waited nearby on the side of the road to watch, in violation of the DVPO. Mother also stated that Father lost his job and moved in with his parents. Mother requested attorney's fees.

Also on June 20, 2023, Father filed a petition for contempt against Mother alleging that she failed to timely drop the child off for parenting time on multiple occasions and refused to bring the child to Father seven times.

---

[3] Both parties were present and represented by counsel at the March 6, 2023, hearing.

[4] Mother was granted exclusive use and possession of the marital home in the court's January 30, 2023, ex parte order. In the April 17, 2025, order, Mother was awarded the home as a part of equitable distribution.

On July 31, 2023, the family court held a status hearing on the divorce, combined with Mother's ex parte motion and the parties' dueling petitions for contempt. The GAL moved the court to order the parties to submit to hair follicle testing and forensic parental testing, both of which were granted. Mother testified that Father failed to show up for six of the nine scheduled visits, and the remaining three visits did not occur because Father failed to follow the Sober Link requirements. The family court issued an order from the status hearing finding that Father had violated both the DVPO and the temporary order. Father's parenting time was suspended. Father's petition for contempt was denied and dismissed. Mother's petition for contempt was granted. Mother was also awarded attorney's fees for the three motions/petitions that she filed.

Father was subsequently criminally charged with violating the DVPO, harassment (via computer communications), and obscene threats/communications. On November 6, 2023, Father pled guilty to two counts of violating the DVPO, harassment, and obscene threats/communications.[5] Father was sentenced to one year of home confinement for violating the DVPO and six months of home confinement for harassment and obscene threats/communications, to be served concurrently.

Another status hearing was held on December 11, 2023. At that hearing, the GAL testified that Father failed to submit to the hair follicle testing or the parental fitness testing and that Mother's hair follicle test was negative for all substances. Father testified that he was earning approximately $3,000 per month as a self-employed contractor. The order for this status hearing was entered on January 11, 2024. Father's parenting time remained suspended pending his compliance with hair follicle testing and parental fitness testing. Paternal grandparents were granted one weekly video call with the child and Father was allowed to participate.

On January 17, 2024, Mother filed a petition for a permanent domestic violence protective order. On January 28, 2024, the GAL filed her first written report.[6] She noted that Father failed to meet with her and stated that he had serious substance abuse, mental health, and anger issues, which he refused to acknowledge or treat. Father's criminal charges were also discussed. She recommended that Father have no contact with the child, except for two weekly video calls supervised by paternal grandparents until further order of the court.

On March 18, 2024, Mother filed a motion for expedited relief, noting that Father had over $10,000 in child support arrears and requesting that she be permitted to claim the child on taxes for 2023. That same day, a status hearing was held on the divorce. The status

---

[5] The remaining charges were dismissed.

[6] Father also retained two attorneys below who withdrew from representation.

3

order was entered on March 27, 2024, and noted that Father had already filed his personal income tax return for 2023 claiming the child as his dependent.

On June 23, 2024, the GAL filed a supplemental report. She noted that Father messaged Mother's sister on Facebook and appeared to have been suffering from mental health issues. In Father's message to the sister-in-law, he acknowledged that he used some drugs, and he stated that he was abused by his parents growing up, sexually assaulted by his father, and that he was hearing conversations in his head. He also told Mother's sister that he was so afraid that his father would harm Mother and their child that he drove to their driveway and sat there to keep them safe. The GAL also noted that Father's home confinement was revoked, and he was incarcerated from February 2024 to May 2024. On June 24, 2024, the first part of the multi-part final hearing was held.[7]

On July 24, 2024, Father participated in a parental fitness evaluation with Fremouw, Sigley, and Baker Psychological Associates, PLLC, where he stated that he was hearing voices in January or February of 2024. The evaluation states that he endorsed a number of extreme and bizarre thoughts, suggesting the presence of delusions. He was diagnosed with "narcissistic personality disorder with obsessive and paranoid traits." The evaluator further found that there was no major mental disorder or evidence of a psychotic or manic disorder, but opined that Father tended to blame others rather than take responsibility for his actions and recommended that he engage in a year of weekly psychotherapy that focuses on his personality disorder with regard to narcissism, obsessive thoughts, and paranoid ideation. The evaluator also recommended weekly supervised visits with the child.

On August 6, 2024, Father filed a motion for in-person supervised parenting time alleging that the video calls had been going well. Mother filed a response arguing against his request. The court entered its order on September 19, 2024, denying Father's request because the court had not received the parental fitness evaluation report.[8] Mother moved the court to allow her not to participate in the parental fitness evaluation because it was costly and because her behavior was not concerning like Father's. Mother's motion was granted.

On November 18, 2024, the second part of the final hearing was held. Father was granted in-person visitation with the child at a third-party facility, Welltree. On February 5, 2025, Father filed a petition for contempt against Mother for failing to cooperate with facilitating the visits. The GAL filed text messages between the supervisor at Welltree and Mother showing that Mother did attempt to set up visits for the child and Father.

---

[7] The Honorable Judge Steven Jones presided over the first two final hearings. The Honorable Judge Betty Gregory presided over the last final hearing.

[8] The parental evaluation report is dated September 1, 2024. It is unclear from the record when the report was received by the court.

Another hearing was held on March 9, 2025. A temporary order was entered on April 14, 2025, designating Mother as the primary residential parent, and granting Father unsupervised parenting time from 5:00 p.m. on Friday to 5:00 p.m. on Sunday on the first, second, and third weekends of each month. Father and Mother were granted two non-consecutive weeks of vacation and ordered to communicate through AppClose. Father was ordered to pay $634.63 per month in child support, effective April 1, 2025. The family court ordered the parties to submit proposed findings of fact and conclusions of law by April 9, 2025.

On March 10, 2025, the third and final part of the final hearing was held.[9] In the April 17, 2025, final divorce order, the family court made the following findings of fact and conclusions of law:

- Prior to the divorce, both parties performed an equal share of parenting responsibilities.
- Both parties worked prior to the separation and used grandparents as babysitters.
- Since the filing of the action, Father had no overnight parenting time with the child for over two years.
- Several witnesses testified that Father had an alcohol problem.
- There were no issues with Father's visitation with the child at Welltree.
- Father had a history of DUI, but his arrests occurred more than ten years ago.
- Father testified that he was not currently consuming alcohol and that he would not consume it in the child's presence.
- Neither party proved an ongoing alcohol problem for the other parent; therefore, it was not considered as a limiting factor.
- Both parties filed multiple motions and petitions alleging various acts of misconduct by the other parent. None of the alleged actions necessitate the court limiting time with either of the parties.
- 50-50 parenting is in the child's best interest.
- Mother failed to prove the existence of any limiting factors.
- The parties will have week-on/week-off parenting time with exchanges taking place each Friday at 6:00.
- The parties will have shared decision-making and follow the court's holiday schedule.
- Neither party shall owe child support.
- Respondent has $24,000 in child support arears. He shall pay Mother $500.00 per month for forty-eight months beginning May 1, 2025.
- The court failed to recalculate child support when Father lost his job in 2023. The present court does not disturb the prior court's order regarding child support.

[9] The record indicates that the March 10, 2025, hearing was scheduled at the end of the November 18, 2024, hearing in which Judge Jones presided.

5

- Mother's request for a permanent protective order is denied.
- Neither party presented evidence of needing spousal support.
- Neither party shall be awarded attorney's fees.
- Mother owes Father an equalization payment of $10,297.50 and shall pay such balance within six months.

It is from the April 17, 2025, final divorce order that Mother now appeals.

For these matters, we apply the following standard of review:

> When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

On appeal, Mother asserts twelve assignments of error, some of which we will consolidate, as they are closely related. *See Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (per curiam) (allowing the consolidation of related assignments of error). First, Mother argues that the family court abused its discretion in failing to limit Father's parenting time because he has committed domestic violence, pursuant to West Virginia Code §§ 48-9-209[a](3) and 48-9-209(b). Second, Mother argues the family court abused its discretion in denying Mother's request for a permanent protective order pursuant to West Virginia Code §§ 48-27-505(c)(1)-(2) and 48-5-608. Third, Mother argues that the family court abused its discretion by ordering a week on, week off parenting plan when Father would have to drive the child forty-five minutes to take the child to school. Fourth, Mother argues that the family court erred when it permitted Father four years to pay his $24,000 child support arrearage but only allowed Mother six months to pay $10,297.50 in equitable distribution. Fifth, Mother argues that it was clearly erroneous for the family court to find that Father made payments on Mother's vehicle while the divorce was pending. Sixth, Mother argues that the family court erred when it found that there was no evidence of need or ability to pay spousal support. Seventh, Mother argues that the family court erred when it denied her request for attorney fees.[10]

---

[10] Mother also argues that the family court erred by adopting the proposed order submitted by Father's counsel with only minor changes made to it by the family court, contrary to our previous decision in *Jonpaul C. v. Heather C.*, 248 W. Va. 687, 694, 889 S.E.2d 769, 776 (Ct. App. 2023). We disagree with this characterization of *Jonpaul C.* In *Jonpaul C.*, this Court did not discourage family courts from adopting proposed orders, but

Father asserts one cross assignment of error, namely that the family court erred in failing to retroactively modify his child support obligation due to the loss of his job. We will address each of these assignments of error below.

First, Mother argues that the family court abused its discretion when it failed to limit Father's parenting time even though Father had committed domestic violence. We agree that the family court erred in failing to address Father's commission of domestic violence. West Virginia Code § 48-9-209[a](3) states that the family court "*shall* consider whether a parent . . . has committed domestic violence." (emphasis added). If a parent has been found to have committed domestic violence, the family "court *shall* impose limits that are reasonably calculated to protect the child or [the] child's parent from harm." W. Va. Code § 48-9-209(b) (emphasis added). Moreover, the family court "may not allocate custodial responsibility or decision-making responsibility to [the parent who committed domestic violence] without making special written findings that the child and other parent can be adequately protected from harm by such limits[.]" W. Va. Code § 48-9-209(c).

Here, a DVPO was entered against Father on April 17, 2023. Father subsequently pled guilty to violating the DVPO. While the record is replete with evidence regarding Father's commission of domestic violence, the family court failed to address the requirements of West Virginia Code § 48-9-209[a]-(c) in adopting the parenting plan.[11] This Court has remanded family court orders that failed to adequately address limiting factors found in West Virginia Code § 48-9-209. *See Kane M. v. Miranda M.*, 250 W. Va. 701, 908 S.E.2d 198 (Ct. App. 2024); *Jonathon F. v. Rebekah L.*, 247 W. Va. 562, 883 S.E.2d 562 (Ct. App. 2023); *Rachel B. v. Benjamin B.*, No. 25-ICA-8, 2025 WL 1604587 (W. Va. Ct. App. June 6, 2025) (memorandum decision). On the issue of insufficient orders, the Supreme Court of Appeals of West Virginia ("SCAWV") has held that:

---

instead reminded family courts that "courts must caution themselves from adopting wholesale orders without determining that the order adequately and accurately reflects the court's findings, analysis, and rulings." *Id.* However, due to our decision below to vacate and remand a significant portion of the order on appeal, we decline to address this assignment of error further.

[11] Prior to the entry of the final order, there were several temporary orders in this matter, some of which applied West Virginia Code § 48-9-209[a]-(c). The limitations imposed included supervised visitation and limiting Father's contact with the child. West Virginia Code § 48-9-206(c) states that the family court may not consider a temporary order regarding allocation of custodial responsibility unless both parties have agreed to the allocation provided in the temporary order, which is not applicable here as the parties did not agree. Though limiting factors were addressed and applied in temporary orders, the family court is required to make specific findings in its final permanent parenting plan order.

to properly review an order of a family court, "[t]he order must be sufficient to indicate the factual and legal basis for the [family court]'s ultimate conclusion so as to facilitate a meaningful review of the issues presented." *Province v. Province*, 196 W. Va. 473, 483, 473 S.E.2d 894, 904 (1996); *see also Nestor v. Bruce Hardwood Flooring, L.P*., 206 W. Va. 453, 456, 525 S.E.2d 334, 337 (1999) ("[O]ur task as an appellate court is to determine whether the circuit court's reasons for its order are supported by the record."). "Where the lower tribunals fail to meet this standard—*i.e.* making only general, conclusory or inexact findings—we must vacate the judgment and remand the case for further findings and development." *Province*, 196 W. Va. at 483, 473 S.E.2d at 904.

*Collisi v. Collisi*, 231 W. Va. 359, 363-64, 745 S.E.2d 250, 254-55 (2013).

Therefore, the family court's order regarding the parenting plan is vacated and this matter is remanded for further analysis. On remand, the family court shall address West Virginia Code § 48-9-209[a]-(c) by expressly considering Father's commission of domestic violence, by imposing such limits or conditions on Father's parenting time as are reasonably calculated to protect Mother and the child from harm, and by making special written findings that Mother and the child can be protected from harm with those limits in place.[12]

Second, Mother argues that the family court erred when it denied her request for a permanent protective order. As noted above, Mother was granted a DVPO on April 17, 2023. In June of 2023, Mother filed a petition for contempt, alleging that Father had violated the DVPO. The family court granted Mother's motion and suspended Father's parenting time. Father has also pled guilty to criminal charges surrounding his actions towards Mother, including violating the DVPO. West Virginia Code § 48-5-608(c) permits family courts to enter protective orders as a part of final divorce actions, stating that:

(c) The court, in its discretion, may enter a protective order, as provided by the provisions of article twenty-seven of this chapter, as part of the final relief in a divorce action, either as a part of a[n] order for final relief or in a separate written order. A protective order entered pursuant to the provisions of this subsection shall remain in effect for the period of time ordered by the court not to exceed one hundred eighty days: Provided, That the court may extend the protective order for whatever period the court deems necessary to protect

---

[12] On remand, the family court should consider any additional evidence that has occurred while this appeal was pending, including any protections that have been in place to protect Mother and the child from harm and any other evidence that could be relevant to the family court's analysis of West Virginia Code § 48-9-209[a]-(c).

the safety of the petitioner and others threatened or at risk, if the court determines:

> (A) That a violation of a protective order entered during or extended by the divorce action has occurred[.]

Here, the family court denied Mother's request for a permanent protective order without addressing the circumstances that led to the DVPO, that it had been extended, and that Father had violated the DVPO.[13] While the family court is granted discretion in this regard, we hold that in light of the facts in the record the family court's rationale and findings in the order before us regarding Mother's request for a permanent protective order are insufficient to enable our appellate review of the exercise of discretion on this safety issue. On remand, the family court is instructed to address West Virginia Code § 48-5-608(c) and determine whether a permanent protective order should be granted in this case with sufficient analysis and findings to enable appellate review.

Third, Mother argues that the family court erred when it failed to analyze whether the distance between the parties' residences, transportation difficulty, daily schedules, and the child's education affected 50-50 parenting. We agree. Pursuant to West Virginia Code § 48-9-209(f)(5)(A)-(D), the family court shall consider whether 50-50 parenting time is:

> (A) Impractical because of the physical distance between the parents' residences;
> (B) Impractical due to the cost and difficulty of transporting the child;
> (C) Impractical due to each parent's and the child's daily schedules;
> (D) Would disrupt the education of the child[.]

Upon review of the record, Father testified that he was only requesting weekend parenting time with the child during the school year due to the distance between Father's home and the child's school, noting that he did not want to "disrupt [the child's] life." Despite Father's own testimony and request for less than equal parenting time, the family court ordered that the parties exercise 50-50 parenting time. We find that the family court's order not only failed to properly address the DVPO factor addressed above, it further failed to address the limiting factors set forth in West Virginia Code § 48-9-209(f)(5)(A)-(D) which were clearly at issue in the proceedings below. Accordingly, we vacate and remand on this issue and instruct the family court to address these limiting factors, including whether the physical distance between the parties' residences and the child's commute to school warrant deviating from 50-50.[14]

---

[13] The DVPO expired on January 16, 2024.

[14] At oral argument, Father's counsel stated that, after the final parenting plan order was entered, the parties agreed to deviate from 50-50 parenting time due to the distance

Fourth, Mother argues that it was an abuse of discretion to order that Mother pay her portion of the equitable distribution to Father within six months, while allowing Father four years to repay his $24,000 in child support arrears. Mother asserts that this was an abuse of discretion because the family court found that the parties had equal incomes, Mother's financial statement reflected that she had a monthly shortfall of $1,848.15 in her budget, Father failed to present a budget, and the court previously determined that Father was at one time capable of paying child support in the amount of $2,727.05 per month. We disagree. The family court is required to equitably divide marital property between the parties and the court is within its discretion to order that the sum be paid in installments. *See* W. Va. Code §§ 48-7-101 and 48-7-104(7)(C). Given our deferential standard of review, we are unable to conclude that the family court abused its discretion on setting payment schedules for the equitable distribution payments and child support arrears payments.

Fifth, Mother argues that the family court erred when it found that Father made Mother's vehicle payments during the pendency of the divorce, as ordered in the court's April 11, 2023, temporary order, when the record clearly shows that Father did not make any of the required payments. In response, Father concedes that the order incorrectly states that Father paid the vehicle payments but argues that the issue is moot. Upon review of the record, we agree with Mother that the family court erred. The transcript of the March 10, 2025, hearing reflects that Father admitted on the record that he had not paid Mother's vehicle payment since April of 2023 even though he was previously ordered to do so. The family court failed to explain why Mother did not get a credit for the amount Father failed to pay and erroneously stated that Father had in fact made those payments.[15] Therefore, we vacate this finding and instruct the family court on remand to correct the order and recalculate equitable distribution, if necessary.

Sixth, Mother argues that the evidence supported an award of spousal support. In support of her argument, Mother asserts that the family court erroneously found that

---

between the parties. Nothing in this decision should be interpreted or applied to foreclose the parties from agreeing to a parenting plan on remand or otherwise. However, it remains the family court's role to determine whether any agreed upon plan would be harmful to the child. *See* W. Va. Code § 48-9-201.

[15] West Virginia Code § 48-5-507(b) states that the family court may order that a party make vehicle payments during the pendency of a divorce and that those payments are deemed to be temporary spousal support. However, subsection (c) states that vehicle payments may be made without denominating them as temporary spousal support and the family court may reserve that decision until the marital property is equitably divided. *See* W. Va. Code § 48-5-507(c). During equitable distribution, the court may consider the vehicle payments made as a partial distribution of marital property, regardless of whether the payments toward the vehicle were considered temporary spousal support. *See id.*

Mother did not present evidence supporting the spousal support factors found in West Virginia Code § 48-6-301. The Supreme Court of Appeals of West Virginia has previously held that:

> As we stated in *Burnside,* 194 W.Va. at 275, 460 S.E.2d at 276, "[f]indings of facts are adequate only if they are sufficient to indicate the factual basis for the ultimate conclusion. If an order lacks adequate detail, the case will be remanded for additional specificity." (Citation omitted.) Of course, we do not mean to suggest that in all cases a family law master must consider all relevant factors before exercising its discretion. To be specific, *"it is not necessary to make specific findings as to each statutory factor recited but only those applicable and appropriate to the case." Burnside,* 194 W.Va. at 275 n. 30, 460 S.E.2d at 276 n. 30.

*Banker v. Banker*, 196 W. Va. 535, 548-549, 474 S.E.2d 465, 478-479 (1996) (emphasis added). Here, the record reflects that Mother did present evidence on the spousal support factors. However, the family court did not address any of the spousal factors in its order and erroneously stated that neither party presented evidence regarding the spousal support factors. Thus, the family court's findings regarding spousal support are insufficient for appellate review. Therefore, we vacate and remand for further findings of fact and conclusions of law on spousal support.

In Mother's final assignment of error, she argues that the family court erred when it failed to award her attorney fees. When deciding whether a party is entitled to attorney fees, the family court is required to analyze Syllabus Point 4 of *Banker v. Banker*, 196 W. Va. 535, 474 S.E. 2d 465 (1996), which states:

> In divorce actions, an award of attorney's fees rests initially within the sound discretion of the family law master and should not be disturbed on appeal absent an abuse of discretion. In determining whether to award attorney's fees, the family law master should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request.

Here, the family court simply stated in its order that the parties are in a similar position regarding their ability to pay attorney fees and declined to grant Mother's request. The family court did not conduct a meaningful *Banker* analysis. Therefore, we vacate and remand on this issue, with directions to the family court to conduct the requisite *Banker* analysis to determine whether Mother should be awarded attorney fees.

On appeal, Father asserts one cross-assignment of error. Father argues that the family court erred when it failed to modify his child support obligation upon his loss of employment in 2023. In response, Mother argues that Father did not file a motion to modify his child support and even if he did, the family court does not have the authority to retroactively reduce his child support obligation. We agree with Mother. "A court's authority to modify a child support order is limited to those cases in which a motion requesting such relief has been filed." *Skidmore v. Skidmore*, 225 W. Va. 235, 245, 691 S.E.2d 830, 840 (2010); *see also Ann L. v. Patrick J.*, No. 22-ICA-316, 2023 WL 4029109, at *2 (W. Va. Ct. App. June 15, 2023) (memorandum decision) (holding that a petition to modify child support is required for the family court to modify child support). Furthermore, the SCAWV has held that:

> The authority of a family court to modify a spousal support or child support award is prospective only and, absent a showing of fraud or other judicially cognizable circumstance in procuring the original award, a family court is without authority to modify or cancel accrued alimony or child support installments.

Syl. Pt. 2, *Hayhurst v. Shepard*, 219 W. Va. 327, 633 S.E.2d 272 (2006).

Here, the family court modified child support from $1,000 to $0 in the final order but declined Father's request to retroactively modify it, which would result in a reduction of his child support arrears. Father orally requested the retroactive modification of child support but failed to make a sufficient showing to warrant cancelation of accrued support payments in arrears. Therefore, we affirm the family court's holding regarding child support.

Based on the foregoing, we affirm, in part, and vacate, in part, the family court's April 17, 2025, Final Order of Divorce and remand the matter for further proceedings consistent with this decision.[16]

Affirmed, in part, Vacated, in part, and Remanded, with Directions.

**ISSUED: February 19, 2026**

**CONCURRED IN BY:**

---

[16] This decision does not disturb the family court's specific finding that the parties' past alcohol abuse is not a limiting factor pursuant to West Virginia Code § 48-9-209(f)(4)(D).

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White